# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | | |
|---|---|---|
| **ELEANOR THOMAS,** | ) | |
| | ) | |
|    **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 2:16-00581-N** |
| | ) | |
| **NANCY A. BERRYHILL[1], Acting** | ) | |
| **Social Security Commissioner,** | ) | |
| | ) | |
|    **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. § 405(g) Plaintiff Eleanor Thomas. ("Thomas" or "Plaintiff") seeks judicial review of an adverse social security ruling denying disability insurance benefits and supplemental security income. (Docs. 1, 13). With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73. (See Docs. 16, 18). The parties requested that oral argument be waived, and their request was granted. (Docs. 17, 19). After considering the administrative record and the memoranda of the parties, the Court finds that the decision of the Commissioner due to be **AFFIRMED** and this action **DISMISSED** accordingly.

---

[1] Nancy A. Berryhill has replaced Carolyn Colvin and is now the acting Social Security Commissioner.

## PROCEDURAL BACKGROUND

Plaintiff protectively applied for disability insurance benefits and supplemental security income on April 29, 2013. (Doc. 13 at 1; Tr. 159-168, 194). Plaintiff alleged a disability onset date of January 1, 2012. (Doc. 12, Fact Sheet; Doc. 14 at 1). Her application was initially denied on August 21, 2013, after which she requested a hearing. (Doc. 13 at 1; Tr. 103-114). Plaintiff attended a hearing before an Administrative Law Judge ("ALJ") on February 23, 2015, and the ALJ rendered an unfavorable decision on May 5, 2015. (Doc. 13 at 1; Tr. at 17-76).

At the time of the administrative hearing, Plaintiff was fifty eight years old with a high school diploma, and previous work history as a babysitter and maid. (Doc. 12). Plaintiff alleges she is disabled due to diabetes, neuropathy, and hypertension. (*Id.*) On May 5, 2015, an ALJ denied benefits after determining that Plaintiff was capable of performing medium work activity and could return to her previous job as a maid. (Tr. at 26-30). Plaintiff requested review of the hearing decision, but the Appeals Council denied the request on September 29, 2016. (Tr. at 1-5).

Plaintiff claims that the ALJ erred in finding Plaintiff could perform medium work and that Plaintiff should be found disabled under Grid Rule 202.04 and/or 201.01. (Doc. 13 at 1). Within Plaintiff's first contention of error is also a claim that the ALJ failed to properly develop the record and/or improperly substituted his own opinion as to Plaintiff's limitations. (*Id.* at

7).  Defendant has responded to—and denies—these claims.  (Doc. 15, generally).

## STANDARD OF REVIEW

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is ' "supported by substantial evidence and based on proper legal standards.  Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." ' " *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curiam) (internal citation omitted) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997))).  However, the Court " 'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Id.* (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))).  "'Even if the evidence preponderates against the [Commissioner]'s factual findings, [the Court] must affirm if the decision reached is supported by substantial evidence.' " *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons.  [The Court] must scrutinize the record as a whole to determine

if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). *See also Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that come before us. Rather, our function is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts."). "In determining whether substantial evidence exists, [a court] must…tak[e] into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

However, the "substantial evidence" "standard of review applies only to findings of fact. No similar presumption of validity attaches to the [Commissioner]'s conclusions of law, including determination of the proper standards to be applied in reviewing claims." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (quotation omitted). *Accord, e.g.*, *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) ("Our standard of review for appeals from the administrative denials of Social Security benefits dictates that '(t)he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ....' 42 U.S.C.A. s 405(g) … As is plain from the statutory language, this deferential standard of review is applicable only to findings of fact made by the Secretary, and it is well established that no similar presumption of validity attaches to the Secretary's conclusions of law,

including determination of the proper standards to be applied in reviewing claims." (some quotation marks omitted)). This Court "conduct[s] 'an exacting examination' of these factors." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). "'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.'" *Ingram*, 496 F.3d at 1260 (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)). *Accord Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In sum, courts "review the Commissioner's factual findings with deference and the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). *See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). However, we review the resulting decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004).").

> Eligibility for DIB and SSI requires that the claimant be disabled. 42 U.S.C. §§ 423(a)(1)(E), 1382(a)(1)-(2). A claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42

U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

*Thornton v. Comm'r, Soc. Sec. Admin.*, 597 F. App'x 604, 609 (11th Cir. 2015)

(per curiam) (unpublished).[2]

> The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips*, 357 F.3d at 1237-39).[3]

"These regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)). "In determining whether the claimant has satisfied this initial burden, the examiner must consider four factors: (1) objective medical facts or clinical findings; (2) the diagnoses of examining

---

[2] In this Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2. *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

[3] The Court will hereinafter use "Step One," "Step Two," etc. when referencing individual steps of this five-step sequential evaluation.

physicians; (3) evidence of pain; and (4) the claimant's age, education, and work history." *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983) (per curiam)). "These factors must be considered both singly and in combination. Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citations omitted).

If, in Steps One through Four of the five-step evaluation, a claimant proves that he or she has a qualifying disability and cannot do his or her past relevant work, it then becomes the Commissioner's burden, at Step Five, to prove that the claimant is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Finally, although the "claimant bears the burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("It is well-established that the ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." (citations omitted)). "This is an onerous task, as the ALJ must scrupulously and conscientiously probe

into, inquire of, and explore for all relevant facts. In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

Where, as here, the ALJ denied benefits and the Appeals Council denied review of that decision, the Court "review[s] the ALJ's decision as the Commissioner's final decision." *Doughty*, 245 F.3d at 1278. "[W]hen the [Appeals Council] has denied review, [the Court] will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998). If the applicant attacks only the ALJ's decision, the Court may not consider evidence that was presented to the Appeals Council but not to the ALJ. *See id.* at 1324.

## DISCUSSION

At Step Two, the ALJ found that Plaintiff has severe impairments of diabetes mellitus and hypertension.[4] (Tr. at 23). At Step Three, the ALJ found that "[t]he claimant does not have an impairment or combination of impairments that meets or equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." (Tr. at 26). The ALJ then determined that "[t]he claimant has the residual

---

[4] The ALJ also concluded that Plaintiff has non-severe impairments of headaches and chronic sinusitis and anxiety and depression. (Tr. at 23-26).

functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416967(c) except for no unrestricted heights; no driving and occasional climbing." (*Id*.) At Steps Four and Five the ALJ found that plaintiff had no past relevant work at the level of substantial gainful activity, but that there were a significant number of other jobs in the national economy which she was able to perform (Tr. 30-31). As a result, the ALJ concluded that Plaintiff was not disabled.

Plaintiff asserts that the ALJ's determination was in error because "[t]he evidence of record before the ALJ contained only raw medical evidence …[and] [w]hile a consultative exam was ordered, the physician provided no analysis of the raw medical findings, no diagnosis, and no assessment of Ms. Thomas' functional abilities." (Doc. 13 at 6). Therefore, Plaintiff contends that "[b]y failing to seek or obtain the opinion of an examining physician, the ALJ failed to fully and fairly develop the record" and "[b]ecause there were no assessments in the file, the ALJ had to fill the void himself" which resulted in an opinion that is "not supported by the opinion of any medical source." (*Id*. at 7). Defendant asserts that Plaintiff failed to point to any deficiencies within the record which necessitated the ordering of a consultative exam and that the ALJ properly assessed Plaintiff's RFC based on substantial evidence. (Doc. 14 at 13). The undersigned will address whether the ALJ erred in failing to develop the record and whether the ALJ's RFC was based on substantial evidence in turn.

## A.     Failure to Develop the Record

"It is well-established that the ALJ has a basic duty to develop a full and fair record. 20 C.F.R. § 416.912(d). "Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." *Ellison*, 355 F.3d at 1276; *see also* 20 C.F.R. § 416.912(a) (stating that "[claimant] must furnish medical and other evidence that we can use to reach conclusions about your medical impairment(s)"); 20 C.F.R. § 416.912(c) (stating "[y]our responsibility. You must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say you are disabled").   In fulfilling the duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such is necessary to enable the ALJ to render a decision. *River v. Astrue*, 901 F. Supp. 2d 1317, 1327-28 (S.D. Ala. 2012); *see also Ingram*, 496 F.3d at 1269. ("The administrative law judge has a duty to develop the record where appropriate but is not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed decision.").  It is only where a consultative examination is necessary for the ALJ to make a decision due to some conflict, ambiguity, or other insufficiency in the medical evidence that the regulations require an ALJ to order a consultative examination. *River*, 901 F. Supp. 2d at 1328; *see also* 20 C.F.R. § 404.1519a(a)(2) ("When we purchase a consultative examination, we

will use the report from the consultative examination to try to resolve a conflict or ambiguity if one exists. We will also use a consultative examination to secure needed medical evidence the file does not contain such as clinical findings, laboratory tests, a diagnosis or prognosis necessary for decision."), 20 C.F.R. § 404.1519a(b) ("A consultative examination may be purchased when the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on your claim."); *see also Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir. 1997) ("The Secretary has broad latitude in ordering consultative examinations.").

Plaintiff summarily argues that a lack of medical assessment in Plaintiff's file triggered the ALJ's duty to further develop the record prior to determining Plaintiff's RFC. However, Plaintiff's argument is misplaced because a lack of physical assessment does not equate to a lack of sufficient medical evidence on which the ALJ could rely to make an informed decision. *See Manasco v. Colvin*, 2014 WL 1513173 at * 3 (N.D. Ala. 2014) ("Developing a full and fair record, however, does not require an ALJ to secure a medical source opinion regarding the claimant's RFC.") *citing to* 20 C.F.R. §§ 404.1546(c), 416.946(c); *Langley v. Astrue*, 777 F. Supp. 2d 1250, 1261 (N.D. Ala. 2011) ("The failure to include [an RFC assessment from a medical source] at the State agency level does not render the ALJ's RFC assessment invalid."); *Green v. Soc. Sec. Admin*, 223 F. App'x 915, 923–24 (11th Cir. 2007). "Because the overall RFC determination is 'based on all the relevant

evidence in [the claimant's] case record,' 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1) (emphasis added), the ALJ can fulfill his responsibility to develop the record even without a medical source opinion. Thus, as long as the ALJ's determination is based on substantial evidence, the absence of an RFC assessment by a medical source will not render the ALJ's RFC determination invalid." *Manasco* at *3. (*citing to Green,* 223 F. App'x at 924.)

In Plaintiff's case, the medical evidence as a whole, which Plaintiff does not dispute that the ALJ considered in its entirety, contains several references to Plaintiff's physical limitations and/or lack thereof. Namely, as pointed out by Defendant, Plaintiff's VA medical records[5] indicated that: on April 25, 2012, Plaintiff had zero pain, a negative foot exam, steady gait, and no edema (Doc. 14 at 2; Tr. 292-98, 580, 96); in November, 2012, Plaintiff had zero pain, steady gait, and no edema. (Doc. 14 at 2-3; Tr. 283, 288); and in April 2013, Plaintiff's review of symptoms remained unchanged (Doc. 14 at 3; Tr. at 276-77). Further, Plaintiff underwent a consultative exam by Dr. Judy Travis, M.D., on July 18, 2013, which Plaintiff describes as failing to provide any functional assessment. (Doc. 13 at 3). However, Dr. Travis did perform a physical exam which the ALJ summarized as follows:

> In July 2013, Judy Cooke Travis, M.D. performed a consultative physical examination of the claimant. She complained of diabetes mellitus, chronic sinusitis, hypertension, and muscle spasms around her left eye and brow. Her blood pressure was 110/70. Her heart had a regular rate and rhythm, with no murmurs, gallops, or rubs. Her

---

[5] Plaintiff receives her medical treatment at the VA Medical Center and has no primary care physician or treating physician. (Doc. 13 at 5).

back and spine had normal curvature and range of motion. Her upper extremities had normal range of motion and 5/5 grip bilaterally, with normal dexterity in both hands. Her lower extremities had a normal appearance and range of motion bilaterally with no evidence of muscular atrophy. She had normal sensation to touch and 5/5 motor strength in all extremities. Dr. Travis assess benign essential hypertension and diabetes, uncomplicated type 1, uncontrolled. She also provided a problem list of labile insulin dependent diabetes with neuropathy, hypertension, anxiety, and chronic sinusitis (Ex. 4F). Dr. Travis's findings and diagnoses are generally consistent with the medical evidence of record as a whole, which shows conservative treatment for diabetes mellitus and hypertension, and with the claimant's descriptions of activities of daily living.

(Tr. at 28). The ALJ also noted that in 2014, Plaintiff continued to struggle to control her diabetes, but reported walking 20 or 30 minutes most days with a friend. (Tr. at 29). At that time, Plaintiff was assessed with mild and improving neuropathy. (*Id.*)

Plaintiff does not refute the findings in the medical records referred to above, nor does she point to additional records which contradict these records, such that confusion or contradiction necessitated a need for further development. As a result, the undersigned finds that the medical record contained sufficient evidence on which the ALJ could make an informed decision, such that the ALJ did not err by failing to order a consultative exam that included a physical assessment of Plaintiff.

### B. Substantial Evidence

Because the ALJ did not error by failing to further develop the record, the inquiry becomes whether the record contained substantial evidence to support the ALJ's RFC. "The RFC assessment is a function-by-function

assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." Social Security Ruling 96-8p, *Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims*, 1996 WL 374184, *3. It involves determining the claimant's ability to do work in spite of his or her impairments in consideration of all relevant evidence. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The Court notes that the ALJ is responsible for determining a claimant's RFC. 20 C.F.R. § 416.946 (2015); *see also Robinson v. Astrue*, 3605 F. App'x 993, 999 (11th Cir. 2010) (stating that "the task of determining a claimant's residual functional capacity and ability to work is within the province of the ALJ, not of doctors"). That decision cannot be based on "sit and squirm" jurisprudence. *Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984). However, the Court also notes that the social security regulations state that Plaintiff is responsible for providing evidence from which the ALJ can make an RFC determination. 20 C.F.R. § 416.945(a)(3).

While recognizing that an ALJ has the authority to determine an RFC, Plaintiff contends that in her case, the ALJ was "simply not qualified to formulate a residual functional capacity on his own" because the ALJ did not simply find that Plaintiff could perform a full range of medium work, but rather, he added specific limitations, which was a "detailed analysis of medical records [that] is not within his purview [because] such specificity can only be reached by a physician." (Doc. 13 at 7). In support of this argument,

Plaintiff states "[t]here is no evidence in the record that Ms. Thomas is capable of performing medium work. She has never performed medium work in the past." (Doc. 13 at 8). Plaintiff's argument is not persuasive.

Prior to determining Plaintiff's RFC, the ALJ considered Plaintiff's impairments of anxiety and depression and found that they were not severe because they did not cause more than minimal limitations to Plaintiff's ability to perform basic mental work activities. (Tr. at 23). In reaching his RFC determination, the ALJ noted Plaintiff's alleged disabling conditions, symptoms, and limitations as follows: diabetes mellitus, hypertension, vision loss, high cholesterol, and iron deficiency. (Tr. at 27). The ALJ summarized Plaintiff's complaints as follows:

> She reported joint pain in her left arm. She stated she could lift about five pounds and walk about a mile before resting for a few minutes. She had difficulty with lifting, squatting, bending, standing, and reaching. She has difficulty with hearing and seeing, particularly at night. Consequently, she did not drive at night. However, she was able to cook, clean, and do laundry on a daily basis, both for herself and for her employers (Ex. 5E/6-8). At the hearing she testified that she had neuropathy that caused pain in her lower extremities that rated as 8 out of 10 and made it difficult for her to walk. She stated that she could stand for five minutes and sit for 20 minutes. She had headaches and sinus infections that made it difficult for her to focus. Her hypertension and high blood sugar caused blurred vision.

(Tr. at 27). The ALJ then summarized Plaintiff's medical records and noted that Plaintiff had a history of diabetes dating back to 2002 which Plaintiff has struggled to control with medication. (Tr. at 28-29). The ALJ further stated as follows:

Although the claimant has underlying impairments capable of resulting in some pain and limitations, her allegations as to the intensity, frequency or level of severity is not completely credible. As stated above, the claimant has diabetes mellitus that has been poorly controlled at times, but it has not resulted in retinopathy or nephropathy. Although the claimant testified that neuropathy caused her extreme pain, treatment records indicate that it was mild and improving (Ex. 9F/11). Her hypertension has been well controlled by medication, and has not resulted in cardiovascular accidents, end organ damage or other disabling abnormalities. Her allegations that she had difficulty with sitting, standing, and walking appear inconsistent with her reports that she continued to work part-time as a maid, volunteer at her church, and walk 20-30 minutes a day for exercise. The claimant's reported activities of daily living show that she is capable of the residual functional capacity provided.

The above residual functional capacity assessment is supported by the record as a whole, including the claimant's testimony as to her ability to perform activities of daily living. The claimant has some limitations due to her impairments, however, the impact of the claimant's symptoms does not wholly compromise the claimant's ability to function independently, appropriately, or effectively on a sustained basis in a workplace setting. The intensity and persistence of symptoms as alleged by the claimant are not consistent with the medical record signs and laboratory findings or medical record. Her limitations are addresses by limiting her to medium exertion with no exposure to unrestricted heights and only occasional climbing. Her concerns, with vision, although unsupported by the multiple vision examinations at 1F, 4F, and 8F, are addressed by limiting her to no driving.

(Tr. at 29-30).

As an initial matter, Plaintiff has not pointed to any medical evidence that supports her contention that she is unable to perform a limited range of medium work, as determined by the ALJ. Instead, Plaintiff points to her subjective testimony as to her limitations and the fact that Plaintiff has never before performed medium work. However, the ALJ considered Plaintiff's testimony and specifically articulated the reasons for finding it to

be less than credible. Additionally, the fact that Plaintiff has never worked at the medium level is not evidence that she was or is incapable of doing so. Lastly, despite Plaintiff's assertions that the ALJ went beyond his purview by applying restrictions to Plaintiff's RFC, there is no indication in the record that these restrictions were so complex that they required a medical opinion to ascertain. Moreover, as the ALJ articulated, the subject restrictions were based, in part, on Plaintiff's non-credible testimony and her medically unsupported claims relating to her vision. (Tr. at 30). As a result, Plaintiff's contention that the ALJ's assessment was beyond the scope of what the ALJ is allowed to do is without merit.

As discussed above, Plaintiff's medical records contained sufficient medical information on which the ALJ could rely in reaching his determination as to Plaintiff's RFC. Further, the ALJ properly articulated his reasons for not finding Plaintiff's testimony as to her physical limitations to be credible. Moreover, it is evident that the ALJ considered the medical records relating to Plaintiff's impairments, which did not contain any physical restrictions, in conjunction with her testimony that she continued to work part time as a maid in determining Plaintiff's RFC and then further restricted Plaintiff based on her subjective visual concerns, even though the ALJ did not find that the medical records substantiated those concerns. (Tr. at 29-30). As a result, the undersigned finds that despite Plaintiff's

assertions to the contrary, there was substantial evidence on which the ALJ relied in determining Plaintiff's RFC. Accordingly, the ALJ did not err.

### C. Grid Rule 202.04 and/or 201.01

Plaintiff additionally argues that she is disabled under Grid Rule 202.04 and/or 201.01. (Doc. 13 at 8-9). However, Plaintiff's contention is based entirely on her assertion that the ALJ's RFC was not supported by substantial evidence. Because the undersigned has determined that the ALJ's RFC determination was not in error, Plaintiff's argument that she is disabled under the subject grid rules is equally without merit.

### CONCLUSION

Plaintiff has raised two claims in bringing this action and both are without merit. Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Therefore, it is **ORDERED** that the Commissioner's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action be **DISMISSED**. Final judgment will be entered separately.

**DONE** and **ORDERED** this the 11th day of September 2017.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**